**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: ALAN WOLF, | : | CIVIL ACTION NO. 16-5229 |
| _____Debtor_____ | : | |
| EDWARD JORDAN, | : | |
| Appellant, | : | BANKRUPTCY NO. 15-10768 |
| | : | |
| v. | : | |
| | : | |
| ALAN WOLF, | : | |
| | : | |
| _____Appellee._____ | : | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                            **August 29, 2017**

Edward Jordan appeals from the Bankruptcy Court's order denying his proof of claim

arising from the botched sale of a 1953 Cadillac Eldorado automobile 18 years ago.[1]  For the

following reasons, and having considered fully the briefs and the record on appeal, and

determining that oral argument is not necessary in this case,[2] the Court will affirm the order of

the Bankruptcy Court.

**I.      BACKGROUND**

The following facts are taken from the Bankruptcy Court's opinion sustaining Debtor-

Appellee Alan Wolf's objection to Appellant Edward Jordan's claim.[3]  Because the Court writes

primarily for the parties, it recounts only those facts necessary to give context to its decision.

In early 1999, Jordan contacted Wolf after seeing an advertisement for the 1953 Cadillac

Eldorado.  Wolf was a 90% owner of Modern Classics, Inc., a licensed collector car dealership

---

[1] Bankruptcy courts have jurisdiction to hear and determine all core proceedings under Title 11 of the United States Code.  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a) to consider Jordan's appeal from the September 15, 2016 order of the Bankruptcy Court.

[2] Fed. R. Bankr. P. 8019.

[3] _In re Wolf_, 556 B.R. 676, 684, 686 (Bankr. E.D. Pa. 2016).

that had been in business for approximately 22 years.  In response to the inquiry, on Modern Classics stationery, Wolf provided Jordan with additional information including that payment was to be made by a check payable to Alan Wolf.  In February 1999, Jordan signed a contract to buy the Eldorado for $59,000.  The contract stated that it was an invoice from Modern Classics and that Alan Wolf was the seller, and was signed by Jordan and Wolf.  Wolf deposited Jordan's check into his personal bank account.  Rather than deliver the Eldorado to Jordan, Wolf ultimately sold the Eldorado to another buyer in August 2000 for $48,000.[4]

Wolf initially offered to refund Jordan, but then offered to replace the Eldorado with a 1953 Cadillac Speedster (the "Speedster"), which would need additional repairs to match the Eldorado's condition.  Jordan accepted the offer for the replacement car.  The repairs on the Speedster took at least ten years to complete.

In 2010, when it became clear that the Speedster transaction would not pan out, the parties entered into an agreement for repayment of the amount originally paid by Jordan over five months.  Wolf signed the repayment agreement above the words "Modern Classics."  Wolf missed his first scheduled payment, and instead sent Jordan a $3,000 check from his personal account several weeks later, which Jordan cashed.  Wolf discussed the possibility of selling personal assets to repay the debt to Jordan.  However, he made no additional payments to Jordan, nor did he deliver any automobile to him.

On April 25, 2012, Jordan sued Modern Classics in the Court of Common Pleas of Philadelphia, and on February 19, 2013, he obtained a default judgment in that court against Modern Classics in the amount of $69,280.  In early 2013, Modern Classics ceased business

---

[4] At trial, the parties blamed each other for the failed transaction.  Wolf stated that he could not reach Jordan, believed Jordan did not want to take possession of the car, and felt compelled to resell it due to "storage charges."  N.T. at 13-14.  Jordan, in turn, claimed that when he called Wolf he was met with excuses from others at Modern Classics.  N.T. at 70.  As the Bankruptcy Court noted, resolving this dispute is not critical to this decision.

operations, and in September 2013 it filed a chapter 7 bankruptcy petition in the Eastern District of Pennsylvania. The bankruptcy action stayed Jordan's state court action against Modern Classics. The Modern Classics bankruptcy case was administered as a no-asset case and closed on May 6, 2014. On October 20, 2014, the state court case was discontinued without prejudice.[5]

On July 22, 2014, Jordan sued Wolf in the Philadelphia Court of Common Pleas, seeking judgment in the amount of $70,800 for breach of contract, fraud, and unjust enrichment. The court sustained Wolf's preliminary objections in part, dismissing the breach of contract claim but allowing the claims of fraud and unjust enrichment to proceed. The court placed the case in deferred status after Wolf filed for bankruptcy in February 2015. On July 5, 2017, the state court matter was "administratively closed due to docket inactivity of more than 24 months."

On February 2, 2015, Wolf filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[6] in the Bankruptcy Court for the Eastern District of Pennsylvania. On May 15, 2015, Jordan filed a proof of claim in the amount of $85,186.89, to which Wolf objected. The Bankruptcy Court set a schedule for discovery, and Jordan eventually filed a motion for summary judgment, which the Bankruptcy Court denied. The Bankruptcy Court held a hearing, at which Wolf and Jordan testified, and after which the parties filed post-trial briefs. On September 15, 2016, the Bankruptcy Court sustained Wolf's objection and disallowed Jordan's claim. This appeal followed.

---

[5] Although the parties did not provide specifics about the state court cases related to this matter, the Court follows the Bankruptcy Court in taking judicial notice of the relevant state court dockets. *See, e.g.*, *Haynes v. Kerestes*, No. 2:14-CV-5623, 2017 WL 2729185, at *1 n.2 (E.D. Pa. June 23, 2017) (district court may take judicial notice of state docket sheets available on Pennsylvania's Judiciary Web Portal) (citation omitted).

[6] 11 U.S.C. §§ 1301, *et seq.*

## II.  STANDARD OF REVIEW

A district court in reviewing the decision of a bankruptcy court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings."[7]  A district court reviews the bankruptcy court's "legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof."[8]  A finding of fact is "clearly erroneous" when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data."[9]  "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts."[10]  The Court's review is limited to the record before the Bankruptcy Court.[11]

## III.  DISCUSSION[12]

### A.  Whether Wolf Is Personally Liable

The outcome of this case turns on whether Jordan contracted with Wolf personally, or with Modern Classics.  Jordan contends that the Bankruptcy Court erred as a matter of law in

---

[7] *In re Cohen*, 106 F.3d 52, 55 n.1 (3d Cir. 1997) (quoting former Fed. R. Bankr. P. 8013).  As another court has noted, the 2014 amendments to the Federal Rules of Bankruptcy Procedure removed former Rule 8013, but "[d]espite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court."  *In re Great Atl. & Pac. Tea Co., Inc.*, No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015); *accord Hoover v. Jones*, 546 B.R. 12, 19 n.4 (B.A.P. 6th Cir. 2016) (although the language governing appeals was omitted, "the Panel holds that the standard of review, which is well established by case law, has not changed.").

[8]  *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

[9]  *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340 (3d Cir. 2002) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d Cir. 1983)).

[10]  *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods.*, 310 F.3d 118, 122 (3d Cir. 2002) (quoting *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d at 122) (internal quotation marks omitted).

[11] 28 U.S.C. § 158; *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 210 n. 19 (3d Cir. 1995).

[12] Jordan urges the Court to rule in his favor because, beyond a two-paragraph statement directing the Court to the Bankruptcy Court's "impeccable" and "unimpeachable" opinion, Wolf did not respond to Jordan's appeal.  The Court declines to interpret Wolf's minimalist response as mandating reversal.  See *In re Olick*, No. 10-7492, 2011 WL 5075104, at *4 (E.D. Pa. Oct. 26, 2011), *aff'd*, 504 F. App'x 189 (3d Cir. 2012) (quoting *Fairview Township v. EPA*, 773 F.2d 517, 525 n. 15 (3d Cir. 1985)) ("It is well settled that we [can] affirm the district court on any basis which finds support in the record.").

holding that Wolf was not personally liable. Given Wolf's 90% ownership of Modern Classics and his personal involvement in the transactions at issue here (*e.g.*, depositing a check from Jordan into his personal account), Jordan argues that the Bankruptcy Court should have found that the contract was between Jordan and Wolf.

The Bankruptcy Court's finding was not clear error, as the evidence showed that Jordan was doing business with Modern Classics, not Wolf. Jordan received information about the Eldorado on Modern Classics stationery, the invoice for the Eldorado was issued by Modern Classics, and Wolf signed the repayment agreement above the words "Modern Classics." Jordan's claim that he "always believed" he was dealing with Wolf personally, and not Modern Classics,[13] is further contradicted by his first having sued Modern Classics, and not Wolf, to recover the money he paid for the Eldorado. Additionally, there is no evidence that Wolf used the payment for his own benefit: instead, the testimony presented at trial suggests that the money benefitted Modern Classics.[14] As the Bankruptcy Court explained,

> The Debtor's acceptance of a personal check must be considered in context. Modern Classics was in business for over twenty (20) years. Undoubtedly, it participated in numerous purchase transactions with suppliers and sales transactions with customers. The extent of this business activity and, more importantly, the frequency with which the Debtor used his personal account for Modern Classics' transactions was not developed at trial . . . Nor was the record developed on other relevant issues in either the 1999-2001 time frame (or a more extended time period) such as: how much, if any, of the $60,000.00 the Debtor invested back in Modern Classics; and whether the Debtor regularly treated Modern Classics revenues as personal income without paying corporate debts.[15]

---

[13] Doc. No. 4 at 23.

[14] N.T. at 50 ("I checked with the bank and they said – several banks said it would clear quicker if he made it payable to me. And since the money was going to go out right away, I didn't think it made a difference.").

[15] *In re Wolf*, 556 B.R. at 690.

For these reasons, Jordan's claim that Wolf is personally liable lacks merit, and the Bankruptcy Court did not err.[16]

## B.  Withdrawal of Unanswered Requests for Admission

Jordan next argues that the Bankruptcy Court abused its discretion in *sua sponte* withdrawing the requests for admission ("RFAs") that Wolf failed to answer.  Under Federal Rule of Civil Procedure 36(a)(3),[17] a matter is deemed admitted unless it is denied within 30 days after being served.  Rule 36(b) provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  The Bankruptcy Court's holding with regard to the RFAs was twofold: first, it found that the RFAs were ambiguous and "did not solicit the admission that [Wolf] personally contracted with Jordan," and second, that the RFAs should be withdrawn because it would be unfair to allow Jordan to prove his case in this way.[18]

Jordan served the RFAs on Wolf on October 19, 2015.  The relevant RFAs for the purposes of this appeal were:

> 3. Admit that You made the offer to sell the Eldorado to [Jordan] to induce [Jordan] to send $59,000.00 to You.

> 12. Admit that, after selling the Eldorado to someone other than [Jordan], You offered to deliver to [Jordan] the Roadster.

> 15. Admit that you signed the Agreement and sent the Agreement to [Jordan] by facsimile on August 5, 2010.[19]

---

[16] The cases upon which Jordan relies in support of this argument are distinguishable based upon the Bankruptcy Court's findings of fact.  *See Darlington Brick & Clay Prods. Co. v. Aino*, 310 A.2d 401, 402 (Pa. Super. Ct. 1973) (agent was individually liable where he "did not indicate he was ordering [bricks] other than as an individual" and "appellee's manager and comptroller both believed that appellant and [the corporation] were the same person."); *Weimer v. Bockel*, 194 A. 318, 321 (Pa. Super. Ct. 1937) (vice president and 85% owner of a corporation personally liable for corporation's attorneys' fees based on his having used funds for personal use and benefit).

[17] Federal Rule of Bankruptcy Procedure 7036 incorporates Federal Rule of Civil Procedure 36.

[18] *In re Wolf*, 556 B.R. at 684, 686.

[19] Case No. 15-10768-elf, Doc. No. 72-3 at 14, 16.

Wolf never responded to the RFAs. In his response to Jordan's motion for summary judgment, he explained that he did not respond to the RFAs because they were "redundant and a rehash of the same material already provided to [Jordan]" in the prior state action Jordan filed against Wolf.[20] In his brief in response to the motion for summary judgment in this case, Wolf stated that all transactions at issue were "between Jordan and the corporate entity Modern Classics, LLC."[21] The Bankruptcy Court treated this and similar statements at trial as "an implicit request that [Wolf] be permitted to withdraw his admission," and granted the request.[22]

Wolf, who was represented by counsel, made no explicit request to withdraw the admissions in the nearly six months between receiving the RFAs and the trial. Although it appears that Rule 36 does not permit *sua sponte* withdrawal of admissions,[23] any error in withdrawing the RFAs was harmless. Contrary to Jordan's assertions, the RFAs are not the linchpin of this case. As the Bankruptcy Court stated, the admissions are at best ambiguous and fail to establish conclusively that the contract was between Jordan and Wolf. The admissions are not inconsistent with Wolf's repeated position that it was Modern Classics, of which he was a representative, that contracted with Jordan to buy the cars. The actions described in the RFAs— offering to sell a car, offering to replace the car with another, and signing a contract—are actions

---

[20] Case No. 15-10768-elf, Doc. No. 89-1 at 1. Wolf attached the RFAs from the state action to his response; however, while similar in substance, the state court RFAs are not a substitute for the unanswered RFAs at issue here. Case No. 15-10768-elf, Doc. No. 89-2.

[21] Case No. 15-10768-elf, Doc. No. 89-1 at 1.

[22] *In re Wolf*, 556 B.R. at 685.

[23] Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended.") (emphasis added); *see also, e.g.*, *Quasius v. Schwan Food Co.*, 596 F.3d 947, 952 (8th Cir. 2010) ("The parameters for permitting withdrawal of admissions under Rule 36(b) are designed to guide the district court's discretion in evaluating a motion to withdraw. The court is not required to apply them *sua sponte* when a party declines to file the required motion upon invitation from the court."); *Layton v. In'l Ass'n of Machinists & Aerospace Workers*, 285 F. App'x 340, 341 (9th Cir. 2008) (rejecting argument that district court should have withdrawn admissions because "[t]his argument ignores the obvious—[appellant] never made a timley motion for withdrawal, which Rule 36(b) requires"); *Cottrell v. Career Inst. Inc.*, 1 F.3d 1237 (5th Cir. 1993) (unpublished) ("[A] district court is not free to amend or withdraw Rule 36 admissions *sua sponte*.").

that one presumably would take on behalf of a corporation of which he is a 90% owner.[24]

Accordingly, given the development of the record at trial, the Court did not err in its ultimate

conclusion that the contract was between Jordan and Modern Classics.

## C. Evidentiary Issues

Jordan contends that the Bankruptcy Court made erroneous evidentiary decisions. First,

Jordan argues that the Bankruptcy Court erred in denying his motion to reopen discovery after

summary judgment. This argument is essentially the same as his previous argument, as the

motion to reopen discovery sought to compel Wolf to respond to the RFAs. Reopening

discovery to compel responses to the RFAs would not have affected the outcome, and the

Bankruptcy Court's decision to deny the motion was not an abuse of discretion.[25]

Jordan next argues that the Bankruptcy Court abused its discretion by improperly

weighing evidence and allowing conflicting testimony over his objections. The Bankruptcy

Court is entitled to deference in its credibility findings based on conflicting evidence,[26] and upon

review of the trial transcript, the Court finds no abuse of discretion in the Bankruptcy Court's

evidentiary rulings.[27]

---

[24] *See Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1196 (Pa. 2012) ("[A] corporation can only act through its officers, agents, and employees.").

[25] *See In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003) (finding no abuse of discretion in bankruptcy court's denial of request for unnecessary additional discovery); *In re Trans World Airlines*, No. 95-293, 1996 WL 756962, at *3 (D. Del. Dec. 31, 1996) ("Considering the time and effort already expended by both sides in this litigation, the bankruptcy court, in the interest of fairness, exercised its sound discretion by settling unresolved discovery matters with an eye toward maintaining the case's forward momentum.").

[26] *See In re O'Karma*, 46 B.R. 422, 424 (M.D. Pa. 1984) ("Where there is conflicting oral testimony, as was present here, it is the role of the Bankruptcy Court as the finder of fact . . . to resolve those conflicts by making a credibility determination. . . . [G]iven the competent evidence in the record and the Bankruptcy Court's crediting of the debtor's testimony, we affirm the decision of the Bankruptcy Court.") (citation and quotation omitted).

[27] *See, e.g.*, N.T. at 10 (overruling objection invoking best evidence rule because testimony concerned a conversation and not the contents of the document); *id.* at 12 (overruling objection based on best evidence rule because testimony concerned sending letters, not content of letters); *id.* at 51 (overruling relevance objection because business history of Modern Classics was relevant to case).

### D. Breach of Contract

Jordan next urges the Court to reverse the Bankruptcy Court and allow his claim under a breach of contract theory. He avers that the unanswered RFAs, along with the evidence presented at trial, establish that Wolf breached the February 1999 contract.

This argument fails because Jordan contracted with Modern Classics, not Wolf. "It is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability."[28] As explained, Wolf was not a party to the contract and did not agree to assume individual liability. Thus, there was no breach of contract by Wolf.

### E. Unjust Enrichment

Finally, Jordan contends that, if he is found to have contracted with Modern Classics, his claim is valid under an unjust enrichment theory, and the Bankruptcy Court erred by rejecting this claim. A plaintiff asserting an unjust enrichment claim must establish: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[29]

Determining whether there was unjust enrichment requires asking: who was enriched, and was the enrichment unjust? Jordan bore the burden of showing "a benefit conferred on [Wolf] by [Jordan]"[30] and did not do so. Even though Jordan's check was deposited into Wolf's personal account—conduct which no doubt evinces a lack of professionalism—the testimony did not show that Wolf personally benefitted from the payment. The Bankruptcy Court found that it

---

[28] *Vernon D. Cox & Co. v. Giles*, 406 A.2d 1107, 1110 (Pa. Super. Ct. 1979).

[29] *Montgomery Cty., Pa. v. MERSCORP Inc.*, 795 F.3d 372, 379 n.7 (3d Cir. 2015) (quoting *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)).

[30] *Id.*

was equally possible that the payment was reinvested in Modern Classics, and Jordan therefore failed to show by a preponderance of the evidence that Wolf was unjustly enriched.[31]

## IV. CONCLUSION

For the foregoing reasons, the Court will affirm the order of the Bankruptcy Court sustaining Wolf's objection to Jordan's proof of claim.  An order will be entered.

---

[31] Jordan also asks that the Court award prejudgment interest in the event that it allows Jordan's claim.  Because the Court affirms the Bankruptcy Court's denial of Jordan's claim, it will not address prejudgment interest.